**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICARDO TELIZ-MELCHOR, on behalf of himself, and all other Plaintiff similarly situated, known and unknown, | ) ) ) |
| | ) |
| Plaintiff | ) ) |
| | ) |
| v. | ) ) |
| | ) |
| JACKSON LANDSCAPING, INC., AND DAVID B. JACKSON, INDIVIDUALLY, | ) ) ) |
| | ) |
| Defendants | ) ) |
| | ) |

No. 15 cv 9355

Honorable Judge Samuel Der-Yeghiayan

Magistrate Judge Sidney I. Schenkier

***JURY DEMAND***

**PARTIES' JOINT STIPULATION AND AGREEMENT**
**TO SETTLE CLASS ACTION CLAIMS**

Plaintiff Ricardo Teliz-Melchor ("**Plaintiff**"), individually and on behalf of a class of others similarly situated, and Jackson Landscaping, Inc. and David B. Jackson ("**Defendant**" or "**Jackson**"), have entered into this Joint Stipulation and Agreement To Settle Class Action Claims ("**Agreement**") to settle all issues between them. Except to the extent governed by federal law, the interpretation of this Agreement shall be governed by the statutes and common law of Illinois, excluding any that mandate the use of another jurisdiction's laws.

**I.      BACKGROUND**

**A.      Procedural History**

Plaintiff filed this lawsuit on October 22, 2015. In pursuing the claims of Class Members, and in evaluating the merits of the proposed settlement, Class Counsel has reviewed a significant amount of documents and data, including data regarding wage deductions taken by Defendant for uniforms. Class Counsel has also been provided with copies of other relevant documents and has discussed employment policies and practices in effect during the Covered

Period. The Parties have had substantive discussions for purposes of clarifying the disputes between them. The Parties then agreed to defer further discovery and associated disputes in favor of pursuing settlement.

In an effort to reach a settlement in this lawsuit, Class Counsel and Defendant's counsel engaged in extensive arms-length settlement negotiations, including a settlement conference with Magistrate Judge Schenkier. The Parties have engaged in significant informal discovery, including a large-scale production of data relating to deductions for uniforms by Defendant. The Parties believe they were fully and adequately informed of all facts necessary to evaluate the case for settlement.

### B.      Defendant's Denial of Wrongdoing

Defendant contends that it complied with the Illinois Wage Payment and Collection Act ("**IWPCA**") and all other laws, and denies any and all wrongdoing. Defendant has denied and continues to deny each of the claims and contentions alleged by Plaintiff in this Action, and denies any wrongdoing or legal liability arising out of any facts or conduct alleged in the Action. Nevertheless, Defendant has concluded that further litigation would be protracted and expensive and would divert management and employee time. Defendant has taken into account the uncertainty and risk inherent in litigation and concluded that it is appropriate to fully and finally settle this Action in the manner and upon the terms set forth in this Agreement. Neither this Agreement, nor any document referred to or contemplated in this Agreement, nor any action taken to carry out this Agreement, may be construed as, or used as evidence of, an admission, concession, presumption or indication by or against Defendant of any fault, wrongdoing, culpability, or liability of any kind.

### C. Inadmissibility of Agreement

Neither this Agreement, nor any document, statement, proceeding or conduct related to this Agreement, nor any report or account thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant, including any evidence of an admission, concession, presumption or indication by Defendant of any fault, wrongdoing, culpability, or liability of any kind. Nor shall this Agreement be disclosed, referred to, or offered or received in evidence against Defendant in this Action, or in any other civil, criminal, or administrative action or proceeding, except for the purpose of settling this Action or enforcing this Agreement.

## II. TERMS

The Parties agree as follows:

### A. Definitions

1. "**Action**" means this action, *Teliz-Melchor v. Jackson Landscaping Inc. et al.,* 1:15-cv-9355, currently pending in the United States District Court for the Northern District of Illinois.

2. "**Claim Form(s)**" means the forms approved by Class Counsel and Defendant's counsel which are included as part of Exhibit A (as Exhibit A.1), which, to recover a portion of the Settlement Amount, each Class Member must complete in full and mail, via first-class U.S. mail, within forty-five (45) days following mailing of the Notice of Settlement and Claim Forms in accordance with this Agreement.

3. "**Class**" or "**Class Member(s)**" means: (i) Ricardo Teliz-Melchor; and (ii) all of Defendant's landscaping employees, employed between January 1, 2007 and December 31, 2015 who had a deduction taken from their wages for uniforms.

4.     "**Class Counsel**" means John Billhorn of the Billhorn Law Firm who represent Plaintiff and the Class Members in this Action.

5.     "**Class Representative,**" "**Plaintiff,**" **or** "**Named Plaintiff**" means Ricardo Teliz-Melchor.

6.     "**Court**" means the U.S. District Court for the Northern District of Illinois.

7.     "**Covered Period**" means 12:01 A.M. on January 1, 2007 through December 31, 2015.

8.     "**Jackson**" or "**Defendant**" means Jackson Landscaping, Inc., and David B. Jackson.

9.     "**Final Approval Order**" means the Court's Order Granting Final Approval of this Agreement.

10.     "**Litigation**" means this Action, Case No. 1:15-cv-9355.

11.     "**Notice of Settlement**" means the forms approved by Class Counsel and Defendant's counsel which are included as part of Exhibit A, inclusive of the Claim Form(s) (Exhibit A.1), which the Settlement Administrator will mail, via first-class U.S. mail, to each Class Member to explain the terms of the settlement and the claims process.

12.     "**Party**" or "**Parties**" means the Class Representatives, Class Members, Named Plaintiff, and Defendant.

13.     "**Released Person(s)**" means Jackson Landscaping, Inc. and David B. Jackson, all current and former parents, subsidiaries, affiliates, and corporate siblings, and, with respect to each of them, their predecessors and successors, and, with respect to each such entity, all of its or their past, present, and future partners, employees, officers, directors, stockholders, shareholders, members, managers, owners, representatives, assigns, attorneys, agents, insurers,

4

and any other persons acting by, through, under or in concert with any of these persons or entities, and their successors.

14. "**Settlement Administrator**" means American Legal Claims Services, LLC, which has been jointly designated by counsel for the Parties to perform the duties and responsibilities of Settlement Administrator set forth in this Agreement.

16. "**Settlement Amount**" means the total amount of Thirty-Five Thousand Dollars and No Cents ($35,000.00), which Defendant has agreed to pay in settlement of the claims of the Class Members, including individual payments to members of the Settlement Class, Incentive Payment for the Class Representative, and payments for Class Counsel's attorneys' fees and costs, in accordance with the terms of this Agreement.

17. "**Settlement Class**" means all members of the Class, including the Class Representative, who file a timely Claim Form and do not opt-out of the settlement in accordance with the procedures set forth in this Agreement.

18. "**Settlement Effective Date**" means the first day following the last of the following occurrences: (i) the issuance of the Court's Final Approval Order; (ii) if an objection has been made to final approval of the settlement, the date on which the objector's time to appeal the Final Approval Order has expired with no appeal or other judicial review having been taken or sought; or (iii) if an appeal of the Final Approval Order has been timely filed, the date the Final Approval Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review.

**B.      Preliminary Approval**

1.      On or before February 23, 2017, the Parties will petition the Court for an order: (i) preliminarily certifying the Class for settlement purposes; (ii) preliminarily approving this Agreement; (iii) approving the Settlement Administrator to mail the Notice of Settlement to Class Members describing the terms of this Agreement and informing them of their rights to submit objections and to opt out; (iv) appointing Class Counsel; and (v) preliminarily enjoining, pending the outcome of the Final Approval Hearing, all members of the Class from commencing, prosecuting or maintaining any claim already asserted in, and encompassed by, this Action, or commencing, prosecuting or maintaining in any court or forum, other than the Court, any claim, action or other proceeding that challenges, or seeks review of or relief from, any order, judgment, act, decision or ruling of the Court in connection with this Agreement (hereinafter the "**Preliminary Approval Order**").

2.      After the Preliminary Approval Order is entered, a hearing date will be set, at the Court's convenience, for consideration of the Parties' Motion for Final Approval and for Certification of the Settlement Class (the "**Final Approval Hearing**").  The Parties' Motion for Final Approval and for Certification of the Settlement Class will be due within forty-five (45) days after the close of the objection and opt-out period provided for in this Agreement, and the Final Approval Hearing will be held within sixty (60) days after the close of the objection and opt-out period.

3.      The time periods referenced in Section II.B. of this Agreement are guidelines. Actual dates will be inserted in the Preliminary Approval Order by the Court.

### C.        Settlement Administrator's Duties and Responsibilities

The Settlement Administrator will: (i) prepare and mail the Notice of Settlement and Claim Forms to the Class Members, along with a stamped return envelope; (ii) conduct a second mailing for any Class Member for whom the first mailing of the Notice of Settlement and Claim Form was returned as undeliverable and for whom additional and/or new address information is available via a skip trace or other standard means; (iii) seek additional information from Class Counsel or Defendant's counsel when appropriate or necessary; (iv) receive opt-out statements, objections, and rescissions of opt-out statements, and provide a copy thereof to Class Counsel and Defendant's counsel at the conclusion of the objection and opt-out period; (v) provide a copy of all timely submitted Claim Forms to Class Counsel and Defendant's counsel at the conclusion of the objection and opt-out period; (vi) enforce the deadlines for claimants to submit their Claim Forms and for Class Members to affirmatively opt-out; (vii) prepare and submit to Class Counsel and Defendant's counsel a list of all Class Members who submitted timely Claim Forms and are eligible to receive settlement payments from the Settlement Amount, (viii) receive from Defendant and mail settlement checks representing payments to Class Members who submitted a timely Claim Form, the Incentive Payment, and the payments to Class Counsel as provided in this Agreement; (ix)  track, skip trace and attempt to deliver unclaimed or returned settlement checks; (x) prepare and submit to Class Counsel and Defendant's counsel a final reconciliation and report of all settlement checks; and (xi) perform any other duties necessary to carry out its responsibilities as set forth in this Agreement or agreed to by the Parties.

**D.      Administration by Trustee**

The Settlement Administrator will act as a fiduciary with respect to the performance of the duties and responsibilities set forth in Section II.C. of this Agreement.

**E.      Benefits**

1.      <u>Settlement Amount</u>.  Defendant agrees to pay the gross amount of Thirty-Five Thousand Dollars and No Cents ($35,000.00) (the "**Settlement Amount**") to settle the claims of the Class Members as provided in this Agreement. The Settlement Amount shall include:

(a)  the total amount of Eighteen Thousand, Nine Hundred and Seventy-Three Dollars and 66/100 Cents ($18,973.66) for individual payments to members of the Settlement Class, including the Class Representative, for their release of their IWPCA claims as provided in Section II.F.2. of this Agreement;

(b)  the total amount of Three Thousand Dollars and No Cents ($3,000.00), to the Named Plaintiff for his role in litigating this Action on behalf of the putative class and in consideration for the Named Plaintiff releasing all claims which could have been or were asserted in this Action (including, but not limited to, his FLSA and IMWL claims) (the "**Incentive Payment**"); and

(c)  the total amount of Thirteen Thousand Twenty-Four Dollars and No Cents ($13,024.00) in attorneys' fees and costs payable to Class Counsel allocated as $6,512.00 to the Billhorn Law Firm and $6,512.00 to the Farmworker & Landscaper Advocacy Project.  These payments shall be made beginning on or around June 1, 2017, in a monthly amount of $1,628.00, due on the first of each month until payment is made in full.

The settlement payment for each Class Member from the amount of $18,973.66 shall consist of: (i) the amount of any deductions taken for uniforms from that Class Member during the Covered Period, and (ii) the 50% of the two percent per month statutory penalty set forth in the IWPCA calculated based upon those deductions. Exhibit B to this Agreement reflects the settlement amount that each Class Member is eligible to receive.

2. <u>Unclaimed Funds</u>. In the event any Class Member fails to timely submit a Claim Form, cannot be found, affirmatively opts-out of the Class, or fails to cash a settlement check within three (3) months from the date of mailing, any unclaimed funds shall be allocated to a separate fund maintained by Defendant (the "**Remainder Fund**") as provided in Section II.G.18. of this Agreement. The full amount allocated to the Remainder Fund shall be distributed, as follows, within twenty-eight (28) days after the later to occur of (1) the Settlement Effective Date or (2) cancellation of any unclaimed checks as provided above:

(a) The first $2,500.00 in the Remainder Fund shall be allocated to Class Counsel for fees and costs, with $1,250.00 going to the Billhorn Law Firm and $1,250.00 to the Farmworker & Landscaper Advocacy Project;

(b) The remaining Fund after the reduction described in Section II.E.2.(a) above shall be allocated as 50% to pay or reimburse Defendant for administration costs incurred or paid to American Legal Claims Services, LLC (the "**Settlement Administrator**") and/or the Additional Incentive Payment to the Named Plaintiff; and 50% would be allocated to a *cy pres* as follows: HACES (Hispanic American Community Education and Services) in Waukegan, Illinois**.**

3. <u>Attorneys' Fees and Costs</u>. The Parties have agreed to the payment of $13,024.00 in attorneys' fees and costs payable to Class Counsel allocated as $6,512.00 to the Billhorn Law Firm and $6,512.00 to the Farmworker & Landscaper Advocacy Project. Additionally, as explained above, the first $2,500.00 from the Remainder Fund shall be allocated to Class Counsel for fees and costs, with $1,250.00 going to the Billhorn Law Firm and $1,250.00 to the Farmworker & Landscaper Advocacy Project. The $13,024.00 shall be paid beginning on or around June 1, 2017, in a monthly amount of $1,628.00, due on the first of each month until payment is made in full. The Remainder Fund fees shall be paid to Class Counsel from the Settlement Amount within twenty-eight (28) days after the Settlement Effective Date.

4. <u>Incentive Payment to Class Representative</u>. For his role in litigating this Action on behalf of the putative class and in consideration for the Named Plaintiff releasing all claims which could have been or were asserted in this Action (including, but not limited to, his FLSA and IMWL claims), the Class Representative will receive an Incentive Payment in the total amount of Three Thousand Dollars and No Cents ($3,000.00), in addition to the share of the Settlement Amount to which he is otherwise entitled as a Class Member through the claims process. The Incentive Payment shall be paid from the Settlement Amount within twenty-eight (28) days after the Settlement Effective Date.

5. <u>Consent to Class Certification For Settlement Purposes Only</u>. For settlement purposes only, Defendant consents to certification under Fed. R. Civ. P. 23(b)(3) of an opt-out Class comprised of: all landscaping employees, employed by Defendant between January 1, 2007 and December 31, 2015 who had a deduction taken from their wages for uniforms. The Parties agree that certification for settlement purposes is not an admission by Defendant that

Rule 23 class certification would be proper absent a settlement. For purposes of settling this Action only, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Class as defined above have been and are met.

**F.    Release of Claims**

1.    <u>Scope of Released Claims: Named Plaintiff</u>. Upon the Settlement Effective Date, the Named Plaintiff Ricardo Teliz-Melchor, on behalf of himself and his heirs, estates, executors, administrators, assigns, transferees and representatives, will be deemed, to the fullest extent permitted by law, to have released and forever discharged the Released Persons from any and all claims, causes of actions, demands, debts, obligations, damages or liability (collectively referred to as "**Claims**") of any nature whatsoever, known or unknown, that he had or may have had arising out of or are relating to his employment or the cessation of his employment with Defendant. The Claims released by the Named Plaintiff under this Agreement include, but are not limited to:

(a)  Claims arising under, based on, or alleging a violation of any federal, state, county or local law, statute, ordinance, decision, order, policy or regulation, including, but not limited to:

- The Illinois Human Rights Act
- The Equal Pay Act, 29 U.S.C. §206(a)
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 et seq.
- The Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq.
- The Health Insurance Portability and Accountability Act
- The Employee Retirement and Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq.
- The Fair Labor Standards Act, 29

- The Sarbanes-Oxley Act, 18 U.S.C. 1514A
- The Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq.
- The Americans With Disabilities Act, as amended, 42 U.S.C. §§ 1201 et seq.
- 820 ILCS 305/4(h) of the Illinois Workers' Compensation Act
- The Illinois Equal Pay Act
- The Illinois School Visitation Rights Act
- The Illinois AIDS Confidentiality Act
- The Illinois Genetic Information and Privacy Act
- The Illinois Wage Payment and

11

U.S.C. §§ 201 et seq.
- The Illinois Minimum Wage Law
- The Immigration Reform and Control Act
- The Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*
- The Occupational Safety and health Act (OSHA)
- The Consolidated Omni Bus Reconciliation Act (COBRA)
- Title VII of the Civil Rights Act of 1964, as amended.

Collection Act
- The Illinois One Day Rest in Seven Act
- The Illinois Health and Safety Act
- The Illinois Whistleblower Act
- The Illinois Victims' Economic Safety and Security Act
- The Illinois Family Military Leave Act
- The Smoke Free Illinois Act
- The Cook County Human Rights Ordinance
- The Chicago Human Rights Ordinance

(b)  Claims arising out of or in any way related to any express, implied, oral or written contract, agreement, offer letter, understanding, handbook, manual, plan, policy statement or employment practice;

(c)  Claims for compensation, including but not limited to wages, bonuses, commissions or accrued vacation pay;

(d)  Claims for benefits, fringe benefits, stock, stock options, severance pay or termination pay;

(e)  Claims for reimbursements of any kind;

(f)  Claims for costs, fees, or other expenses, including, but not limited to, attorneys' fees and costs incurred in connection with this Action;

(g)  Claims for damages or other legal, equitable or injunctive relief, including, but not limited to, compensatory damages, liquidated damages, punitive damages, back pay, front pay, and reinstatement to employment; and

(h)  Claims arising under or based on the common law, including, but not limited to, claims alleging breach of public policy or the implied obligation of good faith and fair dealing, or alleging misrepresentation, defamation, libel, slander, interference with contractual relations, intentional or negligent infliction of emotional distress, invasion of

privacy, false imprisonment, assault, battery, fraud, negligence, or retaliatory or wrongful discharge.

The Named Plaintiff further agrees that the payments he is eligible to receive under this Agreement fully and fairly compensate him for any and all time spent working for Defendant, including any time allegedly worked off the clock and overtime hours.

2.  <u>Scope of Released Claims: Class Members</u>. Upon the Settlement Effective Date, all Class Members who have not excluded themselves from the settlement by filing a timely opt-out notice with the Settlement Administrator, on behalf of themselves and their heirs, estates, executors, administrators, assigns, transferees and representatives, will be deemed, to the fullest extent permitted by law, to have released and forever discharged the Released Persons from any and all Claims arising under, based on, or alleging a violation of the Illinois Wage Payment and Collection Act regarding deductions taken from their wages for uniforms at any time during the period from January 1, 2007 through December 31, 2015 including, but not limited to, any related Claims for attorneys' fees or other costs or expenses.

3.  <u>Claim Forms and Notice of Settlement</u>. The Claim Forms (Exhibit A.1) shall inform the Class Members that, by signing and submitting the Claim Form, they are releasing all Illinois Wage Payment and Collection Act claims against the Released Persons as further detailed in the Notice of Settlement (Exhibit A) and this Agreement.

**G.  Settlement Administration**

1.  <u>Duty of Cooperation</u>. The Parties agree to cooperate in obtaining expeditious preliminary and final approval of this settlement.

2.    Joint Stipulation of Settlement. The Parties will submit this Agreement for review by the Court with a Proposed Order Preliminarily Approving Settlement on or before February 3, 2017, unless the Court and the Parties agree to extend that date.

3.    Data on Class Members. No later than fifteen (15) days after entry of the Preliminary Approval Order, Defendant will provide to the Settlement Administrator and Class Counsel a file listing the names, last known addresses, telephone numbers, and social security numbers of all Class Members, or, if social security numbers are unavailable, dates of birth if they are available. Class Counsel agrees to (i) keep this file and the information it contains confidential, (ii) use it only for the purpose of administering this settlement, and (iii) return it, with all copies, to Defendant immediately after the settlement administration is concluded.

4.    Notice of Settlement. Within thirty (30) days after the Court preliminarily approves the settlement, a Notice of Settlement will be sent by the Settlement Administrator to each Class Member by first-class U.S. mail, postage prepaid.

5.    Claim Forms. Attached to the Notice of Settlement for Class Members will be a Claim Form (Exhibit A.1). The Claim Form shall inform the Class Members that, by signing and submitting the Claim Form, they are releasing Illinois Wage Payment and Collection Act claims against the Released Persons as further detailed in the Notice of Settlement and this Agreement.

6.    Diligence in Finding Claimants. In the event that any Notice of Settlement is returned to the Settlement Administrator, the Settlement Administrator will use standard means, including the National Change-of-Address database or equivalent, to obtain a forwarding address and will use appropriate skip tracing methods to maximize the probability that  each Class Member will receive a Notice of Settlement and Claim Form.

7. <u>Timely Claim Forms</u>. Class Members will have forty-five (45) days from the date of mailing of the Notice of Settlement to submit a Claim Form (Exhibit A.1) or to submit a written request for exclusion or objection. The timeliness of the Claim Form will be measured by the date it is postmarked. No Claim Form will be honored if it is postmarked later than the date specified in the Preliminary Approval Order. The Settlement Administrator will review the Claim Forms and provide Class Counsel and Defendant's counsel with a final list of all Class Members who filed timely Claim Forms, along with copies of such Claim Forms, within fifteen (15) days after the close of the forty-five (45) day period for submitting Claims Forms or Opt-Out Notices as provided in this Agreement.

8. <u>Deficient Claim Forms</u>. If a Claim Form is submitted timely, but is deficient in one or more aspects (for example, the release language has been altered), the Settlement Administrator will return the Claim Form to the Class Member within five (5) days of receipt with a letter explaining the deficiencies and stating that the Class Member will have ten (10) days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form. The envelope containing the resubmitted Claim Form must be postmarked within ten (10) days of the date on the deficiency notice to be considered timely.

9. <u>Opt-Out Procedures</u>. Class Members seeking to exclude themselves from the settlement must provide their name and address and must sign a written statement (the "**Opt-Out Notice**") stating as follows:

> "I am requesting to be excluded from the class monetary settlement in this case. I understand that by excluding myself from the class monetary settlement, I will receive no money from the settlement and although I may bring a separate legal action seeking damages, I might recover nothing or less than what I would have recovered if I filed a claim in this case."

Each Opt-Out Notice must be sent to the Settlement Administrator, with copies to Class Counsel and Defendant's counsel, within forty-five (45) days from the date of mailing of the Notice of Settlement.  The timeliness of the Opt-Out Notice will be measured by the date it is postmarked.  The Settlement Administrator will provide Class Counsel and Defendant's counsel with a list of all Class Members who filed timely Opt-Out Notices, along with copies of all such Notices, within fifteen (15) days after the close of the forty-five (45) day period for submitting Claims Forms or Opt-Out Notices as provided in this Agreement.

10.     <u>Rescinding Decision to Opt Out</u>. Class Members will be permitted to withdraw or rescind their opt-out statements by submitting a "rescission of opt-out statement" to the Settlement Administrator, which will include the following language:

> "I previously submitted an opt-out statement seeking exclusion from the settlement. I have reconsidered and wish to withdraw my opt-out statement. I understand that by rescinding my opt-out I may be eligible to receive an award from the settlement and may not bring a separate legal action against Defendant with respect to any Released Claims."

A Class Member wishing to submit a rescission statement must sign and date the statement and deliver it to the Settlement Administrator postmarked no later than forty-five (45) days after the Settlement Administrator first mails the Notice of Settlement.  The Settlement Administrator will provide Class Counsel and Defendant's counsel with a list of all Class Members who filed a timely rescission to opt-out statement, along with copies of the rescissions, within fifteen (15) days after the close of the forty-five (45) day period referred to above in this Section II.G.10.

11.     <u>Class Members Who Do Not Respond</u>. Class Members, other than those who submit a timely Opt-Out Notice, who do not submit a timely Claim Form will not be allocated or receive any portion of the Settlement Amount, but they will be bound by the judgment

dismissing this Action on the merits with prejudice and will be subject to the release described in Section II.F.2. of this Agreement. The Settlement Administrator will provide Class Counsel and Defendant's counsel with a list of Class Members who did not submit a timely Claim Form within fifteen (15) days after the close of the forty-five (45) day period for submitting Claims Forms or Opt-Out Notices as provided in this Agreement.

12.     <u>Delivery of Settlement Checks to Settlement Administrator</u>. Within fourteen (14) days after entry of the Final Approval Order, Defendant will provide the Settlement Administrator with settlement checks from the Settlement Amount representing payments to Class Members who submitted a timely Claim Form, the Incentive Payments, and the payments to Class Counsel as provided in this Agreement.

13.     <u>Report of Unclaimed and Uncashed Checks</u>.  The Settlement Administrator will provide Class Counsel and Defendant's counsel with a list of Class Members who did not claim or cash their settlement checks within three (3) months after mailing of the check by the Settlement Administrator. Such list shall be provided within five (5) days after the end of such above-referenced three (3)-month period.

14.     <u>Motion for Final Approval</u>. The Parties will prepare a motion for final approval of the settlement.  Class Counsel will timely file the motion for final approval of the settlement, which will include the following proposed orders:

(i)     an Order Granting Final Approval of the Settlement, adjudging the terms to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(ii)    an Order dismissing this Action on the merits, with prejudice, in accordance with the terms of this Agreement; and

(iii)     an Order approving the Incentive Payments to the Class Representative; approving the payment of attorneys' fees and costs to the Billhorn Law Firm and the Farmworker & Landscaper Advocacy Project; and approving payment of reasonable settlement administration costs and fees to the Settlement Administrator as defined herein.

15.     Fairness Hearing. The Court, if it sees fit, will hold a fairness hearing before issuing the Final Approval Order regarding whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the Class Members and regarding Plaintiff's motion for Incentive Payments for the Class Representatives.

16.     Final Approval Order. The Final Approval Order will:

(i)     dismiss with prejudice all claims against Defendant in this Action;

(ii)     declare that all Class Members (except for Class Members who affirmatively opt-out) are bound by the release of claims described in Section II.F.2. of this Agreement; and

(iii)     declare that the Named Plaintiff are bound by the release of claims described in Section II.F.1. of this Agreement.

17.     Distribution of Settlement Amount. Within twenty-eight (28) days after the Settlement Effective Date and subject to the terms of this Agreement, the Settlement Administrator will: (i) mail a check to each member of the Settlement Class in the amount of his or her settlement allocation as set forth in attached Exhibit B; and (ii) mail a check to the Class Representative in the amount of his Incentive Payment as provided in this Agreement.

18.     Allocations to Remainder Fund. For Class Members who cannot be found, fail to submit a Claim Form, or affirmatively opt-out of the settlement, the unclaimed funds shall be

allocated to the Remainder Fund within ten (10) days after Defendant's counsel receives the lists provided for in Sections II.G. 7, 9, 10 and 11 of this Agreement. For Class Members who fail to cash a check within three (3) months after mailing by the Settlement Administrator, the checks will be cancelled and such unclaimed funds shall be allocated to the Remainder Fund within ten (10) days after Defendant's counsel receives the list provided for in Section II.G.13 of this Agreement.

19.     <u>Distribution of Remainder Fund</u>. Within twenty-eight (28) days after the later to occur of (1) the Settlement Effective Date or (2) cancellation of any unclaimed checks as provided above, Defendant shall distribute the Remainder Fund in accordance with Section II.E.2 of this Agreement.

20.     <u>Inquiries or Communications from Class Member</u>. The Farmworkers' And Landscapers' Advocacy Project will respond to all inquiries or communications from Class Members by reference to the Settlement Agreement. Any inquiries that cannot be resolved by reference to the Settlement Agreement shall be raised with counsel for both Parties for resolution. The Parties agree to cooperate to resolve any post-settlement inquiries or communications with Class Members. If Defendant receives an inquiry about the settlement from a current employee or representative of a current employee, Defendant may inform the employee or representative in writing (no verbal representations shall be made) that: (i) the Litigation involves a dispute regarding wage deductions for uniforms; (ii) the Class Representatives claimed that Defendant was required to receive written authorization from the Class Members at the time of each deduction; (iii) Defendant denies any wrongdoing; and (iv) Defendant nevertheless has agreed to settle, in part, to avoid the cost of litigation. Defendant

will further inform any such employee or representative to contact the The Farmworkers' And Landscapers' Advocacy Project if he or she has further questions about the settlement.

21.     <u>Altering Dates</u>. Upon written agreement or with Court approval, the Parties may alter the above dates or time periods.

**H.     Promises**

1.     <u>No Admission</u>. Nothing contained in this Agreement or in any other document related to this Agreement or its approval will be construed as or deemed to be an admission of liability, culpability, fault, negligence, or wrongdoing on the part of Defendant or any of the other Released Persons. Each of the Parties has entered into this settlement with the intention of avoiding further disputes and litigation, and the attendant inconvenience and expenses.

2.     <u>Nondisclosure of the Settlement and its Terms.</u>  Each of the Named Plaintiff agrees that, except as otherwise specifically provided herein, he will not, directly or indirectly, disclose any information concerning the existence or terms of this Settlement Agreement (collectively referred to as the "**Confidential Information**") unless (i) written consent is given by Defendant's President, (ii) required to comply with any federal, state or local law, rule or order, or (iii) required in connection with any suit or action alleging a breach of this Agreement. Notwithstanding the foregoing, nothing in this Section shall prohibit the Named Plaintiff from disclosing the Confidential Information to (i) his spouse, (ii) any federal, state or local government enforcement agency, or (iii) his attorneys, accountants or other tax consultants as necessary to secure their professional advice.

3.     <u>Taxes.</u>  Notwithstanding anything herein to the contrary, Defendant shall issue a tax form W-2 for the portion of the settlement payments to Class Members allocated as reimbursement of wage deductions and shall deduct a flat withholding rate for supplemental

wage payments of twenty-eight (28) percent from these settlement payments to Class Members. Moreover, half of Plaintiff's Incentive Payment shall be subject to federal income tax withholdings in accordance with the claimed exemptions on his IRS Form W-4. For the settlement payments to Class Members allocated as statutory damages under the Illinois Wage Payment and Collection Act, Class Members shall receive a tax form 1099 for such payments only to the extent they exceed $600.00. Plaintiff shall receive a tax form 1099 for one-half of his Incentive Payment.

4.   <u>Waiver of Appeals</u>. The Parties agree to waive all appeals and to stipulate to final certification of the Rule 23 claims, but only for purposes of implementing this settlement. This provision is not applicable in the event the Court modifies the terms of this settlement in any manner.

5.   <u>CAFA Compliance</u>. In compliance with 28 U.S.C. § 1715, within ten (10) days of the Parties' filing a motion for preliminary approval of this settlement, Defendant will supply notice regarding the settlement of this Action to the appropriate federal official and appropriate state officials in each state in which Class Members reside. The Parties agree to cooperate to ensure that the Final Approval Order is not entered prior to ninety (90) days after service of notice under CAFA.

6.   <u>Named Plaintiff - No Rehire</u>. The Named Plaintiff agrees that, in exchange for the consideration provided for in Section II.E.5. of this Agreement, he (i) will not be re-employed with Defendant, and (ii) will not apply for or otherwise seek employment with Defendant at any time. The Named Plaintiff acknowledges that his agreement not to seek future employment as stated herein is purely contractual and is in no way involuntary, discriminatory or retaliatory.

## I.    Miscellaneous

1.    <u>Authority</u>. The signatories represent that they are fully authorized to enter into this Agreement and bind the Parties to these terms and conditions.

2.    <u>Mutual Full Cooperation</u>. The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to implement the terms of this settlement. The Parties to this Agreement will use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary or ordered by the Court or otherwise, to effectuate this Agreement and the terms set forth in it. As soon as practicable after execution of this Agreement, Class Counsel will, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's final approval of the Parties' settlement.

3.    <u>No Prior Assignments</u>. The Parties represent, covenant, and warrant that, except as provided in this Agreement, they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right released or discharged pursuant to this Agreement.   The payment of the fees and costs to Class Counsel provided for this Agreement (i) shall constitute full and final satisfaction of the obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs incurred by or on behalf of any of the Named Plaintiff or Class Members in connection with this Action, and (ii) shall relieve Defendant and Defendant's counsel of any claims or liability to any person, attorney or law firm for any attorneys' fees, expenses or costs to which any of them may claim to be entitled on behalf of any of the Named Plaintiff or Class Members arising out of or relating to

any of the allegations in the Complaint in this Action or any of the Claims released or discharged in this Agreement. In exchange for such payment, Class Counsel will remise, release, and forever discharge any attorneys' lien on the Settlement Amount.

4.      Notices. Unless otherwise specifically provided in this Agreement, all notices, demands or other communications under this Agreement will be in writing and will be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested, addressed as follows:

To the Plaintiff:

John W. Billhorn
Billhorn Law Firm
53 West Jackson Blvd., Suite 840
Chicago, IL 60604

To the Defendant:

Joseph G. Howard
Law Office of Joseph G. Howard, P.C.
219 N. Jefferson St., Suite 600
Chicago, IL, 60661

5.      Construction. The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arms-length negotiations between the Parties and that this Agreement will not be construed in favor of or against any Party by reason of the extent to which any Party or the Party's counsel participated in the drafting of this Agreement.

6.      Construction of Captions and Interpretations. Section or paragraph titles or captions in this Agreement are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any provision in it.

7.      Modification and Waiver. This Agreement may not be changed, altered, or modified except in writing and signed by the Parties and approved by the Court. This

Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties. The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach. If the Court modifies any portion of this Agreement without the consent of both Parties, either Party may void this Agreement in its entirety and the Parties shall revert to the status quo ante.

8.      Privacy of Documents and Information.  The Named Plaintiff and Class Counsel agree that none of the documents and information provided to them by Defendant, including, but not limited to, the documents and information received in connection with the Action through formal or informal discovery, the administration of this settlement, or any other means, shall be used for any purpose other than prosecution of this Action and the administration of this Agreement.

9.      Interim Stay of Proceedings.  The Parties agree to hold all proceedings in the Action, except such proceedings necessary to implement and complete the Agreement, in abeyance pending the hearing on the Final Approval Order.  In this regard, the Parties stipulate that until the Final Approval Order is entered, neither Party need serve or respond to discovery or file responsive pleadings or motions.

10.     Amendment or Modification.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

11.     Integration Clause. This Agreement contains the entire agreement between the Parties relating to the Agreement and transactions described herein, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or a Party's legal counsel, are merged into this Agreement. No rights may be waived except in writing.

12.      <u>Binding on Assigns</u>. This Agreement will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

13.      <u>Counterparts</u>. This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Agreement, which will be binding upon and effective as to all Parties, subject to Court approval.

RICARDO TELIZ-MELCHOR

DATED: _____, 2017.          _____

COUNSEL FOR PLAINTIFF

DATED: _____, 2017.          By: _____
                                              John Billhorn

JACKSON LANDSCAPING INC. AND DAVID B. JACKSON

DATED: _____, 2017.          By: _____

                                              Title: _____

COUNSEL FOR DEFENDANT

DATED: ____, 2017.          By: _____
                                          Joseph G. Howard